```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                      MARSHALL DIVISION

 3   CENTOCOR, ET AL           *    Civil Docket No.
                               *    2:07-CV-139
 4   VS.                       *    Marshall, Texas
                               *
 5                             *    June 29, 2009
     ABBOTT LABORATORIES       *    12:05 P.M.
 6

 7            TRANSCRIPT OF TRIAL PROCEEDINGS
          BEFORE THE HONORABLE JUDGE T. JOHN WARD
 8              UNITED STATES DISTRICT JUDGE
                       AND A JURY
 9

10   APPEARANCES:

11   FOR THE PLAINTIFFS:    MS. DIANNE ELDERKIN
                            MS. BARBARA MULLIN
12                          MR. STEVEN MASLOWSKI
                            MS. ANGELA VERRECCHIO
13                          MR. MATTHEW PEARSON
                            Woodcock Washburn
14                          2929 Arch Street, 12th Floor
                            Cira Centre
15                          Philadelphia, PA   19104

16                          MR. RICHARD SAYLES
                            MR. MARK STRACHAN
17                          Sayles Werbner
                            1201 Elm Street
18                          4400 Renaissance Tower
                            Dallas, TX   75270
19

20   APPEARANCES CONTINUED ON NEXT PAGE:

21   COURT REPORTERS:       MS. SUSAN SIMMONS, CSR
                            MS. JUDITH WERLINGER, CSR
22                          Official Court Reporters
                            100 East Houston, Suite 125
23                          Marshall, TX   75670
                            903/935-3868
24

25   (Proceedings recorded by mechanical stenography,
     transcript produced on CAT system.)
```

```
 1
 2  APPEARANCES CONTINUED:
 3
 4  FOR THE DEFENDANTS:    MR. WILLIAM LEE
                           MS. AMY WIGMORE
 5                         MR. WILLIAM MCELWAIN
                           Wilmer Cutler Pickering Hale
 6                            and Dorr
                           1875 Pennsylvania Avenue, N.W.
 7                         Washington, DC   20006
 8
                           MR. DAVID BECK
 9                         Beck Redden & Secrest
                           One Houston Center
10                         1221 McKinney Street
                           Suite 4500
11                         Houston, TX   77010
12
                *    *    *    *    *    *
13
14
                     P R O C E E D I N G S
15
16            COURTROOM DEPUTY:  All rise.
17            THE COURT:  Be seated.
18            Where's the note?
19            All right.  This is a request to see a
20  demonstrative exhibit.  This Court's practice has always
21  been to bring the jury in and then instruct them that
22  this is a demonstrative exhibit, was not admitted into
23  evidence, but they may look at -- you know, that they
24  can look at it as long as they want to to make any notes
25  that they wish.
```

```
 1                  Any objection from the Plaintiffs at this
 2   time?
 3                  MR. SAYLES:  No objection, Your Honor.
 4                  THE COURT:  From the Defendants?
 5                  MR. BECK:  No objection.
 6                  THE COURT:  Y'all about ready to go on
 7   the PowerPoint?
 8                  Put it up.
 9                  COURTROOM DEPUTY:  They've gone to get
10   the --
11                  THE COURT:  Court security officer?
12                  COURTROOM DEPUTY:  Yes.
13                  THE COURT:  Well, I thought everybody was
14   here.
15                  Bring them in.
16                  COURT SECURITY OFFICER:  All rise for the
17   jury.
18                  (Jury in.)
19                  THE COURT:  Y'all be seated, please.
20                  Everybody be seated.
21                  Ladies and Gentlemen, this exhibit was a
22   demonstrative exhibit that was not offered into
23   evidence.  So I'm not in a -- it wasn't offered into
24   evidence.  You're entitled to look at it as long as you
25   would like to look at it, but you can't ask any
```

```
 1  questions nor anyone discuss it while we're present.
 2  But I see that you didn't bring your notebooks.  Do you
 3  need your notes to look at this exhibit?
 4              Would you like your notebooks or not?
 5              All right.  Why don't y'all return -- why
 6  don't y'all return and get your notes, whatever you want
 7  to write with.  Some want them and some don't.  So those
 8  that want their notebooks, let's go do it.
 9              If you will just indicate to me you have
10  looked at it as long as you want to, that's how long
11  we'll stay.
12              A JUROR:  Could we get it adjusted
13  slightly, Your Honor?
14              THE COURT:  I don't know.  Does it have
15  any adjustment?
16              Dim the lights.
17              (Pause in proceedings.)
18              A JUROR:  We're ready, Your Honor.
19              THE COURT:  All right.  Y'all may return
20  to the jury room and continue deliberations according to
21  my instructions.
22              COURT SECURITY OFFICER:  All rise.
23              (Jury out.)
24              THE COURT:  All right.  Court's in recess
25  pending further notification from the jury.
```

```
 1                    (Recess.)
 2                    (Jury out.)
 3                    COURT SECURITY OFFICER:  All rise.
 4                    THE COURT:  Please be seated.
 5                    The jury wants two exhibits, the Adair
 6   publication, DX361, Casali project and/or Casali
 7   deposition transcript.  We do not know the Casali
 8   exhibit number, signed Donna Coleman, Foreperson.
 9   361 is easy.
10                    What about the Casali?  What are we
11   talking about there?
12                    MR. LEE:  It's just a videotape.
13                    MS. ELDERKIN:  Yeah.  I don't believe
14   there's any Casali exhibit.
15                    MR. LEE:  Just testimony.
16                    THE COURT:  All right.  We'll furnish
17   them -- let's go ahead and send back 361, DX361.
18                    You got the 361?  Any question about what
19   that is?
20                    MR. LEE:  That's it.
21                    MS. ELDERKIN:  That's right, Your Honor.
22                    THE COURT:  Why don't we go ahead -- is
23   it all right to go ahead and send that back and just
24   tell them I will be sending them another note with
25   respect to the other request?
```

```
 1                    (Pause in proceedings.)
 2                    THE COURT:  All right.  With respect to
 3   the other request:  There is not a Casali exhibit.  The
 4   Court is unable to provide you with the Casali
 5   deposition transcript.
 6                    Any objection from the Plaintiff?
 7                    MR. SAYLES:  No objection from the
 8   Plaintiff.
 9                    MR. LEE:  No objection, Your Honor.
10                    THE COURT:  Why don't you type this up
11   for me, and I'll sign it.  Let her do this.
12                    (Pause in proceedings.)
13                    THE COURT:  Does counsel have your copies
14   of the Court's charge available?
15                    Okay.  While we were waiting here, we got
16   another note.
17                    The jury requests a complete detailed
18   description of prior art from the Judge, Donna Coleman.
19                    I would propose to bring the jury in, and
20   I'll re-charge them starting with prior art starting on
21   Page 11 and going down to damages at the top of Page 14.
22                    MS. ELDERKIN:  That's fine, Your Honor.
23                    THE COURT:  Defendant?
24                    MR. LEE:  No objection.
25                    THE COURT:  All right.  Bring them in.
```

```
 1                COURT SECURITY OFFICER:  All rise for the
 2   jury.
 3                (Jury in.)
 4                THE COURT:  Please be seated.
 5                Ladies and Gentlemen, with respect to
 6   your request for a complete detailed description of the
 7   prior art from the Court, please listen to my
 8   instructions.
 9                Prior art, generally speaking.
10                Under the patent laws, a person is
11   entitled to a patent only if the invention claimed in
12   the patent is new and non-obvious in light of what came
13   before.  That which came before the invention is
14   referred to as prior art.
15                Abbott is relying on various items of
16   prior art.  Abbott must prove by clear and convincing
17   evidence that these items are prior art.  In order to do
18   so, Abbott must prove that the item falls within one or
19   more of the different categories of prior art recognized
20   by the patent laws.
21                These categories include anything that
22   was patented or described in a printed publication
23   anywhere in the world before the inventor made the
24   invention or more than one year before the application
25   to which Centocor can claim priority was filed.
```

1              With respect to anticipation, a person
2  cannot obtain a patent on an invention if someone else
3  has already made the same invention.
4              In other words, the invention must be
5  new.  If an invention is not new, we say it was
6  anticipated by the prior art.  An invention that is
7  anticipated by the prior art is not entitled to patent
8  protection.
9              A party challenging the validity of a
10 patent must prove anticipation by clear and convincing
11 standard -- by the clear and convincing standard.
12             For a patent claim to be anticipated by
13 the prior art, each and every limitation of the claim
14 must be present within a single item of prior art and
15 must be arranged or combined in the same way as in the
16 claim.
17             In analyzing this issue, do not focus on
18 any features shown in the written description that are
19 not included in the asserted claims.  You may not find
20 that the prior art anticipates a patent claim by
21 combining two or more items of prior art.
22             A printed publication or patent will not
23 be anticipation unless it contains a description of the
24 invention covered by the patent claims that is
25 sufficiently detailed to teach a skilled person how to

```
 1  make and use the invention without undue
 2  experimentation.
 3              That means that a person skilled in the
 4  field of the invention reading the printed publication
 5  or patent would be able to make and use the invention
 6  using only an amount of experimentation that is
 7  appropriate for the complexity of the field of the
 8  invention and for the level of expertise and knowledge
 9  of persons skilled in that field.
10              In deciding whether or not a single item
11  of prior art anticipates a patent claim, you should
12  consider that which is expressly stated or present in
13  the item of prior art and also that which is inherently
14  present.
15              Something is inherent in an item of prior
16  art if it is the natural result that flows from the
17  disclosure in the prior art.
18              Inherency, however, may not be
19  established by probabilities or possibilities.  The mere
20  fact that a certain thing may result from a given set of
21  circumstances is not sufficient to show inherency.
22              If you find that Abbott has proved --
23  pardon me.
24              If you find that Abbott has provided
25  clear and convincing evidence that any of the claims
```

1  asserted against it are anticipated by prior art, then
2  you must find that those claims are invalid.
3              With respect to printed publication,
4  Abbott contends that the asserted claims are anticipated
5  because of disclosures in prior printed publications.
6              Abbott contends that Claims 2, 3, 14, and
7  15 of the '775 patent are anticipated by the Adair 1992
8  European patent application and United States Patent No.
9  6,090,382, the Salfeld patent.
10             Now, printed publications from anywhere
11 in the world are prior art if the printed publications
12 were published either before the inventor made the
13 claimed invention or more than one year before the
14 earliest application to which you find Centocor may
15 claim priority.
16             If a printed publication was published
17 more than one year before the application to which the
18 Plaintiff can claim priority was filed, then that
19 publication will be prior art regardless of the date of
20 the invention for the patent claims.  The date of
21 invention is irrelevant to this category of prior art.
22             A printed publication will not be in
23 anticipation unless it contained a description of the
24 invention covered by the patent claims that is
25 sufficiently detailed to teach a person of ordinary

```
 1  skill in the art how to make and use the invention
 2  without undue experimentation.
 3              That means that a person of ordinary
 4  skill in the field of the invention reading the printed
 5  publication would be able to make and use the invention
 6  using only an amount of experimentation that is
 7  appropriate for the complexity of the field of the
 8  invention and for the level of expertise and knowledge
 9  of persons of ordinary skill in the field.
10              I'll ask at this time that you -- that's
11  the end of my instructions on prior art, and I'll ask
12  that you return to the jury room and continue your
13  deliberations.
14              And, Mr. Potts, this is in response to
15  one of the questions you had previously...
16              Follow Mr. Potts, if you will.
17              COURT SECURITY OFFICER:  All rise.
18              (Jury out.)
19              THE COURT:  Anything from the Plaintiff?
20              MS. ELDERKIN:  Nothing, Your Honor.
21              THE COURT:  Anything from the Defendant?
22              MR. LEE:  Nothing, Your Honor.
23              THE COURT:  Okay.  All right.  Court's in
24  recess pending receipt of a verdict or further
25  communication, I should say.
```

```
 1                    (Recess.)
 2                    COURT SECURITY OFFICER:  All rise for the
 3  jury.
 4                    (Jury in.)
 5                    THE COURT:  Please be seated.
 6                    Ms. Coleman, you reached a verdict?
 7                    FOREPERSON:  Yes, sir, we have.
 8                    THE COURT:  If you'll hand it to
 9  Mr. Potts, and then he'll hand it up to me.
10                    FOREPERSON:  (Complies.)
11                    THE COURT:  Thank you.
12                    All right, Ladies and Gentlemen.  I'll
13  read these answers.  I'll just read the question number
14  and your -- and the answers, and then I'll ask -- so
15  that the record will be clear, ask if this represents
16  your verdict, to stand after I've read all these.
17                    Question No. 1:  As to all claims, yes.
18                    Question No. 2:  As to all claims, no.
19                    Question No. 3:  Yes.
20                    Question No. 4:  For lost profits,
21  $1,168,466,000.
22                    As a reasonable royalty, $504,128,000,
23  signed by Ms. Coleman.
24                    If this represents your verdict, please
25  stand at this time, the jurors.
```

```
 1                    (All jurors stand.)
 2                    THE COURT:  All right.  The record will
 3   reflect that all jurors are standing.
 4                    Please be seated.
 5                    Ladies and Gentlemen, this completes your
 6   service.  I know these cases are not easy.  There's
 7   always a winner and a loser.  And the lawyers would like
 8   for me to quit talking, but there's a few things I need
 9   to say to you.
10                    I have continuously told you throughout
11   this trial not to talk to anybody about it.  I am now
12   reversing that instruction, and you can talk to anybody
13   about anything you want to talk to, or you can refuse to
14   talk to anybody.
15                    Now, the rule in this district, since --
16   at least since 1968, since that's how long I've been in
17   this district, is that the lawyers are prohibited from
18   contacting you about your verdict or anyone on their
19   behalf.
20                    However, let me assure you, if there's
21   something that you want to say to one of these lawyers,
22   if you see them out here as you leave, the least
23   indication by you that you'd like to talk to them, they
24   would be happy to talk to you, if you want to talk to
25   them.
```

```
 1                      But if you don't want to talk to them,
 2   you just don't indicate that.
 3                      And I will tell you that even though
 4   there's a loser in the case, you've seen the best --
 5   I've been on the bench for 10 years.  I've tried
 6   lawsuits in this courtroom since 19 -- actually, the
 7   first of 1969, I believe.  You will never see a better
 8   group of lawyers, Plaintiffs and Defendants, than you've
 9   seen.
10                      That's my final instructions to you.  You
11   did your part as ordinary citizens, and you've done your
12   part to protect and defend the Constitution of the
13   United States.
14                      I dismiss you at this time with the
15   thanks of the Court.  You may leave the courtroom.
16                      COURT SECURITY OFFICER:  All rise for the
17   jury.
18                      (Jury out.)
19                      THE COURT:  Anything from the Plaintiff
20   at this time?
21                      MR. SAYLES:  We ask for entry of
22   judgment.  Nothing else, though.
23                      MR. LEE:  Your Honor, we still have a
24   couple of equitable issues to try before judgment can be
25   entered, I think.
```

1            THE COURT:  Well, we'll-- have y'all --
2  everyone be seated for a minute.
3            The equitable issues, have y'all
4  discussed among yourselves how much time you're going to
5  need or anything like that?
6            MR. LEE:  I don't think we have.  I don't
7  think it will take more than a day.
8            THE COURT:  Well, why don't y'all discuss
9  among yourselves how long you're going to need and
10 discuss, in the month of July, when you would like to do
11 it.
12           I have -- it appears that the jury
13 docket, once I try the case I start in the morning, once
14 I finish it next week, it looks like we've got about
15 four jury trials or five.  I don't know how many.  We've
16 had several, though.  Some of them have gone away.  So
17 July might be a good time.
18           If y'all feel like visiting today or get
19 back to the Court pretty quickly this week as to when
20 you think you can do it, then I can almost do it any day
21 in July just about.  You can talk with -- Ms. Dupree
22 probably has it, if you want to talk to her.
23           I complimented you on the -- off the
24 record in my chambers and I told the jury and I feel
25 those present that it is a real pleasure for a good

```
 1  judge to sit up here and watch this type of talent in
 2  the courtroom.
 3              It's like the finals of Wimbledon.  You
 4  know, it's like a tennis match.  It's just one good shot
 5  after another one.
 6              Thank you very much.  Stand in recess.
 7              (Court adjourned.)
 8              *     *     *     *     *
 9                      CERTIFICATION
10
11              I HEREBY CERTIFY that the foregoing is a
12  true and correct transcript from the stenographic notes
13  of the proceedings in the above-entitled matter to the
14  best of my ability.
15
16
17
18  /s/_____        _____
    SUSAN SIMMONS, CSR                      Date
19  Official Court Reporter
    State of Texas No.:  267
20  Expiration Date:  12/31/10
21
22
23  /s/_____           _____
    JUDITH WERLINGER, CSR                   Date
24  Deputy Official Court Reporter
    State of Texas No.:  731
25  Expiration Date  12/31/10
```